## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| *JOHN GRIVOIS,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *No. 1:14-cv-68-JHR* |
| | ) | |
| *CAROLYN W. COLVIN,* | ) | |
| *Acting Commissioner of Social Security,* | ) | |
| | ) | |
| *Defendant* | ) | |

### MEMORANDUM DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the administrative law judge failed to properly analyze his fibromyalgia and cognitive impairments, reached a residual functional capacity ("RFC") determination unsupported by the medical opinion evidence, and neglected to make a function-by-function assessment of RFC, particularly with respect to a sit/stand option that he assessed. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 13) at 4-12. I find no reversible error and, accordingly, affirm the commissioner's decision.

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 13, 2015, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 20.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2010, Finding 1, Record at 12; that, through his date last insured, he had severe impairments of degenerative disc disease, fibromyalgia, bilateral carpal tunnel syndrome ("CTS"), depression, anxiety, and a learning disability, Finding 3, *id*.; that, through his date last insured, he had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) except that he needed a sit/stand option, could perform occasional climbing, balancing, stooping, kneeling, crouching, and crawling except that he needed to avoid all ladders, ropes, and scaffolds, could perform occasional bilateral overhead reaching, could perform frequent bilateral grasping and handling, could perform simple unskilled work, and was able to maintain attention and concentration for two-hour increments throughout an eight-hour workday, Finding 5, *id*. at 18; that, through his date last insured, considering his age (47 years old, defined as a younger individual, as of his date last insured, December 31, 2010), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 21; and that he, therefore, had not been disabled from July 24, 2008, his alleged onset date of disability, through December 31, 2010, his date last insured, Finding 11, *id*. at 22.  The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health*

*& Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.  20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I.   Discussion

### A.  Fibromyalgia

The administrative law judge deemed the plaintiff's subjective allegations, including those of pain and restrictions stemming from fibromyalgia, not fully credible, stating:

> The objective medical evidence of record does not show musculoskeletal, neurological or other signs which would explain the nature and intensity of his alleged functional limitations.   [His] alleged side-effects of medications of drowsiness and dizziness are not shown to have significantly limited his ability to perform one or more basic work activities for a consecutive period of 12 or more months and not shown to be true side-effects given his inability to discern if his fibromyalgia pain is his lower back pain or vice versa.

Record at 20-21 (citation omitted).

Earlier in the decision, the administrative law judge also stated:

1.   "[D]espite the [plaintiff's] subjective complaints his musculoskeletal, neurological and extremity testings are all within normal limits, with only some reduced range of motion and tenderness."  *Id*. at 13.

2.      In April 2009, John W. Hall, M.D., diagnosed the plaintiff with fibromyalgia; however, "Dr. Hall's examination was not a traditional examination for fibromyalgia, which notes what number of tender points there are." *Id*. at 13-14; *see also id*. at 560. "He did find tenderness in several areas, which does support his diagnosis." *Id*. at 14.

3.      The plaintiff's fibromyalgia did not meet the criteria of Listing 14.09, pertaining to inflammatory arthritis, for lack of objective medical evidence demonstrating the criteria of the listing. *See id*. at 16.

4.      Agency examining consultant Stacie Kunas, FNP-C, stated that "sitting, standing or walking for prolonged periods of time were possibly limited because of the [plaintiff's] subjective complaints of pain." *Id*. at 19. "Pain, however, is not an impairment or a functional limitation but a symptom." *Id*. "Further, she suggested he increase exercise to encourage joint mobility and because of obesity and increase standing to lessen vertebral load." *Id*.

5.      Limitations assessed by Kunas "in lifting, carrying and holding [the plaintiff's] arms away from his body [were] not corroborated by objective medical evidence of record and [were] based on subjective complaints." *Id*.

The plaintiff complains that, in focusing on a lack of objective evidence, the administrative law judge misunderstood the nature of fibromyalgia, compromising the validity of his determinations regarding the plaintiff's RFC and credibility. *See* Statement of Errors at 4. As the plaintiff points out, *see id*. at 4-5, the First Circuit has recognized that "[f]ibromyalgia is defined as a syndrome of chronic pain of musculoskeletal origin but uncertain cause" and that "the musculoskeletal and neurological examinations are normal in fibromyalgia patients, and there are no laboratory abnormalities[,]" *Johnson v. Astrue*, 597 F.3d 409, 410 (1st Cir. 2009) (citations and internal punctuation omitted). The First Circuit has observed:

4

> [O]nce the ALJ [administrative law judge] accepted the diagnosis of fibromyalgia, she also *had no choice* but to conclude that the claimant suffered from the symptoms usually associated with such condition, unless there was substantial evidence in the record to support a finding that claimant did not endure a particular symptom or symptoms. The primary symptom of fibromyalgia, of course, is chronic widespread pain, and the Commissioner points to no instances in which any of claimant's physicians ever discredited her complaints of such pain.

*Id.* at 414 (citation and internal punctuation omitted) (emphasis in original).

The plaintiff argues that the administrative law judge impermissibly rejected evidence concerning the intensity and limiting effects of his pain, dismissing pain as a mere "symptom" when it is the defining characteristic of the disease of fibromyalgia.  *See* Statement of Errors at 5-6.  He notes that the First Circuit recognized, in *Gagnon v. Secretary of Health & Human Servs.*, 666 F.2d 662, 666 n.8 (1st Cir. 1981), that pain alone can rise to the level of being a nonexertional impairment.  *See id.* at 6 n.1.

These arguments are unavailing.   As the commissioner points out, *see* Defendant's Opposition to Plaintiff's Itemized Statement of Specific Errors ("Opposition") (ECF No. 17) at 5-6, "*Johnson* does not stand for the proposition that an administrative law judge who finds a severe impairment of fibromyalgia must accept a claimant's allegations regarding the extent of his or her limitations at face value[,]" *Tompkins v. Colvin*, No. 1:13-CV-73-GZS, 2014 WL 294474, at *5 (D. Me. Jan. 27, 2014).  In this case, unlike in *Johnson*, the plaintiff neither points to the opinion of a treating source assessing greater restrictions than found by the administrative law judge nor, with one exception that I find inapplicable for the reasons detailed below, describes restrictions that should have been included.  *Compare* Statement of Errors at 2-8 *with Johnson*, 597 F.3d at 410-12.  Even assuming error, this is fatal to her bid for remand on this basis.  *See, e.g., Briggette v. Colvin*, No. 2:13-cv-301-GZS, 2014 WL 3548992, at *6-*7 (D. Me. July 17, 2014) ("While it is certainly error to discount alleged fibromyalgia-related limitations on the basis of a lack of

objective findings, the plaintiff has not shown that this was done in this case, nor that it was not at most a harmless error.  The plaintiff has not identified any specific limitations stemming from her fibromyalgia that the administrative law judge was required to include in her RFC. . . .  Without more, this court can only conclude that any error in this regard by the administrative law judge was harmless.") (citations omitted).[2]

In any event, the plaintiff does not make a persuasive case that the administrative law judge erroneously discounted his fibromyalgia solely on the basis of a lack of objective medical findings. As the commissioner argues, the administrative law judge properly considered a lack of objective findings in that the plaintiff suffered not only from fibromyalgia but also from degenerative disc disease, and even the plaintiff was not sure which of those conditions was causing his pain.  *See* Opposition at 6; Record at 45.  He also considered evidence of findings of tenderness on examination, the efficacy of treatment in relieving the plaintiff's pain, and the plaintiff's activity levels, *see* Record at 13-14, 19-20, all of which are relevant to assessing the credibility of pain complaints, *see, e.g.*, 20 C.F.R. § 404.1529(c)(3)(i), (ii), (iv)-(v) (factors relevant to the evaluation of symptoms such as pain include a claimant's daily activities, the location, duration, frequency, and intensity of his or her pain or other symptoms, the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, and treatment other than medication).

---

[2] The plaintiff does fault the administrative law judge for declining to credit Kunas's statement that "[h]e subjectively report[ed] difficulty lifting and carrying and holding his arms out away from his body at which time he experiences upper extremity discomfort," Statement of Errors at 4; Record at 611.  However, as the commissioner points out, *see* Opposition at 6, the plaintiff overlooks Kunas's qualification that "therefore, a job exclusively requiring him to perform this motion would not be well suited[,]" Record at 611.  The plaintiff does not allege that, if adopted, this vague limitation would have precluded any of the jobs on which the administrative law judge relied at Step 5.  *See* Statement of Errors at 4.  Moreover, as the commissioner notes, *see* Opposition at 7-8, Kunas's report was taken into account by agency nonexamining consultants Donald Trumbull, M.D., and Richard T. Chamberlin, M.D., each of whom assessed specific functional limitations allowing for a range of light or medium work, *see* Record at 113, 117-18, 632-37.

The administrative law judge noted, for example, that Dr. Hall had diagnosed fibromyalgia in April 2009, supporting his diagnosis by finding tenderness in several areas, *see* Record at 13-14, 560; the plaintiff testified that Lyrica worked well but wore off over time and he then switched to a Fentanyl patch that worked at first but had not seemed to work as well recently, *see id*. at 14, 37; by July 2009, the plaintiff's pain was fairly manageable and he was sleeping at night, *see id*. at 14, 462; by September, he was much improved with a medication change, sleeping better at night, more physically active, and capable of splitting some firewood, *see id*. at 14, 457; and, although he reported significant pain the following month, it was noted, in March 2010, that he had done fairly well the prior six months from a pain standpoint, even after reducing his dosage of a duragesic patch to reduce tiredness, *see id*. at 13, 453-55.

He also noted that the plaintiff's wife had completed a function report indicating that the plaintiff made breakfast and lunch, cooked light meals, watched television and listened to music daily, fed and watered pets, vacuumed, swept, did laundry, went out for daily walking, driving, or riding in a car, shopped for clothes, household items, and groceries two to three times a month, conversed with others, and attended medical appointments weekly, although she reported that he had difficulty bending over to put on shoes or clothes. *See id*. at 20, 277-85.

Finally, the administrative law judge took into consideration the reports of agency consultants who had specifically considered the plaintiff's fibromyalgia: examining consultant Kunas and nonexamining consultants Drs. Trumbull and Chamberlin. *See id*. at 18-19, 114-18, 607-11, 638. This fact, as well, weighs against a finding of reversible error. *See, e.g., Nelson v. Social Sec. Admin. Comm'r*, No. 1:10-cv-00032-JAW, 2010 WL 5452126, at *5 (D. Me. Dec. 28, 2010) (rec. dec., *aff'd* Jan. 19, 2011) (no error in discounting claimant's subjective allegations of pain from fibromyalgia when, *inter alia*, no treating source assessed fibromyalgia-related

restrictions, and agency consultants, who assessed no disabling pain-related limitations, took into account claimant's allegations of diffuse pain, even though two did not have benefit of diagnosis of fibromyalgia and one had benefit only of treatment note reporting a suspicion of a degree of fibromyalgia).

For all of these reasons, I find no reversible error and, in the alternative, at most harmless error, in the administrative law judge's consideration of the plaintiff's fibromyalgia.

## B. Cognitive Impairment

The plaintiff next complains that, although the administrative law judge assessed a severe learning disability, he failed to address the evidence underlying it or make allowances for it in his RFC determination, specifically with respect to his alleged inability to read and his slowness in completing tasks. *See* Statement of Errors at 6-7.

He contends that the administrative law judge erroneously deemed his allegation of inability to read not credible without considering evidence to the contrary, *see id.*, including (i) a May 5, 2006, report of agency examining consultant Roger S. Zimmerman, Ph.D., stating that "it is doubtful that reading is beyond the third or fourth grade level" and that he had a verbal comprehension sub-test in the 4th percentile, Record at 842, (ii) an October 28, 2011, note of a treating counselor, Molly Eldredge, LCPC, stating that the plaintiff's sister had accompanied him "to intake due to inability to read or write[,]" *id.* at 749, (iii) the report of the plaintiff's wife that he did not follow written instructions well because he could not read well, *see id.* at 283, and (iv) the plaintiff's testimony at hearing that he obtained his operator's license because the test was read to him, *see id.* at 39, 42. He adds that the only agency nonexamining consultant who saw the Zimmerman report, Mary A. Burkhart, Ph.D., made no mention of the plaintiff's reading level. *See id.* at 618, 629.

He argues that the administrative law judge also erroneously overlooked evidence indicating that he would be very slow at any job he attempted, *see* Statement of Errors at 7, including (i) Dr. Zimmerman's finding that his scores in working memory and processing speed were in the 1st and 2nd percentiles, respectively, *see* Record at 842, and (ii) the plaintiff's testimony at hearing that he had poor math skills and that it takes him longer to learn things than co-workers, *see id*. at 47-48.  He notes that Dr. Burkhart made no mention of his memory and processing speed deficits.  *See id*. at 618, 629, 642.  He asserts that this error is not harmless because the vocational witness present at his hearing testified that a person who was only 25 percent slower than other workers could not be employed.  *See* Statement of Errors at 7; Record at 56-57.

I find no error.  The administrative law judge summarized both the 2006 and 2010 Zimmerman reports, *see* Record at 15-16, and gave great weight to the 2010 report, noting that Dr. Zimmerman deemed the plaintiff "able to communicate, understand, memorize and follow instructions and exhibit an adequate range of social skill but had poor calculating skills although [he] was able to independently manage any awarded funds in his own best interests[,]" *id*. at 19.

He rejected the claim that the plaintiff could not read, noting that "it was not mentioned on psychological examinations[,]" "his intelligence was estimated to be in the low-average range[,]" and "he testified that he does read some although states he does not understand what he is reading and can follow TV listings to find shows."  *Id*.

 As the commissioner argues, *see* Opposition at 11-12, this finding is supported by substantial evidence.  Dr. Zimmerman did not indicate that the plaintiff could not read but, rather, that he could not read beyond a third or fourth grade level.  *See* Record at 842.  And the plaintiff himself admitted that he could read some things.  *See id*. at 39-40.  This alone was sufficient;

however, in summarizing the Zimmerman evidence, the administrative law judge found it noteworthy that the plaintiff had a good work history, had a driver's license, drove, and graduated from high school with passing marks despite being in special education.  *See id*. at 15.  Even acknowledging that the plaintiff testified that his driver's test was read aloud to him, *see id*. at 39, 42, these observations further buttressed the administrative law judge's decision not to credit a claimed inability to read.

With respect to processing speed, the administrative law judge tacitly relied on the opinion of an agency nonexamining consultant, Dr. Burkhart, who cited to Dr. Zimmerman's 2006 report, explicitly referencing his IQ findings in deeming the plaintiff able to understand simple, but not complex, instructions and to carry out simple, but not complex, tasks.  *Compare* Finding 5, *id*. at 18 *with id*. at 642.  At oral argument, the plaintiff's counsel underscored that, while Dr. Burkhart did note the IQ scores, she never referenced the scores that he argued are critical, the working memory and processing speed scores.  *See id*. at 640-42.  He added that, in section I of Dr. Burkhart's mental RFC assessment, she indicated that the plaintiff's ability "to perform at a consistent pace without an unreasonable number and length of rest periods" was "moderately limited."  *Id*. at 641.  He pointed out that, pursuant to Social Security Program Operations Manual System ("POMS") § DI 24510.063, "moderately limited" means that "the individual's capacity to perform the activity is impaired[,]" and "[t]he degree and extent of the capacity or limitation must be described in narrative format in Section III."  POMS § DI 24510.063 (boldface omitted).  He asserted that Dr. Burkhart failed to provide that description.

He added that there is authority that the plaintiff's working memory and processing speed were markedly limited, given that his scores in both categories were more than two standard deviations below the norm, a proposition for which he cited Listings 12.00(D)(6)(c) and 112.00(C),

Appendix 1 to Subpart P of 20 C.F.R. Part 404 (the "Listings").  *See* Listing 12.00(D)(6)(c) ("The IQ scores in [Listing] 12.05 reflect values from tests of general intelligence that have a mean of 100 and a standard deviation of 15[.]"); Listing 112.00(C) ("A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis. When standardized tests are used as the measure of functional parameters, a valid score that is two standard deviations below the norm for the test will be considered a marked restriction.").

The plaintiff falls short of demonstrating that Dr. Burkhart's RFC assessment was invalidated by a failure to consider his working memory and processing speed scores.

First, the plaintiff overlooks other findings in section I that shed light on the moderate finding on which he relies.  Dr. Burkhart noted that, while the plaintiff's ability to understand, remember, and carry out detailed instructions was *markedly* limited, his ability to understand, remember, and carry out very short and simple instructions was *not significantly* limited.  *See* Record at 640.  This suggests that, while his ability to perform at a consistent pace was moderately limited as a whole, it was not significantly limited with respect to short, simple instructions.

Second, as counsel for the commissioner pointed out at oral argument, Dr. Burkhart explained in section III, in deeming the plaintiff capable of understanding and remembering simple instructions, that Dr. Zimmerman noted that he was able to learn a simple word list and that he showed no deficit in short-term auditory memory.  *See* Record at 642.  Consistent with Dr. Burkhart's findings in section I, she stated that, due to the plaintiff's IQ scores, he would not be able to understand complex information or carry out complex tasks.  *See id.*

Third, the plaintiff's Listings argument, which was not made in his statement of errors, *see* Statement of Errors at 6-7, is in any event inapposite.  Listing 12.00(D)(6)(c) describes IQ scores used in Listing 12.05, which pertains to mental retardation, and Listing 112.00 pertains to mental disorders in children under age 18.  I decline to hold that the commissioner improperly relied on the opinion of an expert who assessed the import of testing specifically performed on the plaintiff on the basis of these generalized and seemingly inapplicable Listings.

Finally, as the commissioner argues, *see* Opposition at 13, to the extent that the plaintiff complains that the administrative law judge omitted to find that he would be 25 percent slower than other workers, he identifies no evidence that he had such a limitation, particularly if restricted to simple instructions and tasks, *see* Statement of Errors at 7.

At oral argument, the plaintiff's counsel explained that this limitation was derived from a series of cases interpreting the meaning of a "moderate" limitation, including *Schuh v. Barnhart*, 85 Fed. Appx. 854 (3d Cir. 2004), and *Brewer v. Commissioner of Soc. Sec.*, No. 07-10357, 2008 WL 719228 (E.D. Mich. Mar. 17, 2008).  *See Schuh*, 85 Fed. Appx. at 856 n.3 ("We have indicated that 'moderately limited' means that an impairment interferes with the claimant's ability to perform a given task up to one third of the time."); *Brewer*, 2008 WL 719228, at *7 ("It is hard to reasonably accept 'moderate' as meaning anything less tha[n] 20-30% of the time at work.").

However, as counsel for the commissioner observed, Dr. Burkhart translated her findings in section I, including the finding of a "moderate" limitation in the plaintiff's ability to perform at a consistent pace, into her RFC assessment in section III.  *See* Record at 640-42; *see also, e.g., Hayes v. Astrue*, No. 2:10-cv-42-DBH, 2010 WL 5348757, at *3 (D. Me. Dec. 20, 2010) (rec. dec., *aff'd* Jan. 18, 2011) (the narrative set forth in section III of the commissioner's mental RFC form, rather than the checkboxes indicating moderate and other degrees of limitation, constitutes the

"official RFC assessment") (citation and internal quotation marks omitted).  Caselaw from other jurisdictions defining the meaning of a "moderate" limitation is inapposite.  In any event, as counsel for the commissioner asserted, there is no evidence that the *plaintiff* would have pace problems of that degree if limited to the performance of simple tasks.

The plaintiff, accordingly, falls short of demonstrating that remand is warranted on the basis of the asserted mishandling of his cognitive impairment.

### C.  Other Asserted Flaws in Determining RFC

The plaintiff next challenges the administrative law judge's RFC determination on two additional bases, asserting that he impermissibly relied on his own lay judgment rather than medical opinion evidence and failed to perform a function-by-function analysis of the physical components as required by Social Security Ruling 96-8p ("SSR 96-8p"), in particular, omitting to specify the frequency and duration of sitting and standing for purposes of the sit-stand option that he found the plaintiff required.  *See* Statement of Errors at 7-12.  I find no reversible error.

### 1.  Medical Opinion Evidence

In determining the plaintiff's RFC, the administrative law judge stated that he gave "controlling weight" to the opinion of agency nonexamining consultant Dr. Trumbull that the plaintiff could perform a full range of medium work, but "reduce[d] the capacity to light work to give the [plaintiff] the benefit of the doubt."  Record at 19.  He deemed a 2007 RFC opinion by treating physician Robert J. Jacobs, M.D., immaterial to the plaintiff's current condition but stated that "his assessment that the [plaintiff] was limited to light work exertionally is considered in discrediting the nonexamining agency program physician's residual functional capacity assessment."  *Id.*  Presumably, he meant to indicate that he "discredit[ed]" the RFC opinion of a second agency nonexamining consultant, Dr. Chamberlin, which he had summarized in the

preceding paragraph.  *See id*. at 18-19, 117-18.  Dr. Chamberlin found the plaintiff capable of

lifting and/or carrying 50 pounds occasionally and 20 pounds frequently, *see id*. at 117, a capacity

greater than is required for light work, *see* 20 C.F.R. § 404.1567(b)-(c) ("Light work involves

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up

to 10 pounds[,]" while "[m]edium work involves lifting no more than 50 pounds at a time with

frequent lifting or carrying of objects weighing up to 25 pounds.").

> The administrative law judge gave "some weight" to Kunas's assessment, explaining:

> > [Kunas] assessed that the [plaintiff] could perform sitting, standing, walking,
> > lifting, carrying, handling objects, hearing and speaking.  However, sitting,
> > standing or walking for prolonged periods of time were possibly limited because of
> > the [plaintiff's] subjective complaints of pain.  Pain, however, is not an impairment
> > or a functional limitation but a symptom.  Further, she suggested he increase
> > exercise to encourage joint mobility and because of obesity and increase standing
> > to lessen vertebral load.  Her statement that the [plaintiff] might have difficulty
> > traveling and operating heavy machinery because of narcotics medications is not
> > corroborated by other record evidence.  Limitations in lifting, carrying and holding
> > his arms away from his body are not corroborated by objective medical evidence
> > of record and are based on subjective complaints.  Her assessment that the
> > [plaintiff] would not "thrive" in a "physically demanding job" is a vague work-
> > related limitation[] and not given credence.  Her statement that the [plaintiff] has
> > limitations in intellectual functioning is not substantiated by her finding that he
> > demonstrated no problems in understanding or responding appropriately to
> > questioning.

*Id*. (citation omitted).  He gave "great weight" to the 2010 Zimmerman report.  *See id*.  He

summarized the mental RFC assessment of agency nonexamining consultant Brian Stahl, Ph.D.,

but did not address whether he assigned it any weight.  *Compare id*. at 19 *with id*. at 118-20.  He

did not mention the Burkhart mental RFC assessment.  *See id*. at 19.

### a.  Physical RFC

At oral argument, the plaintiff's counsel complained that the administrative law judge

rejected the conclusion of both Drs. Trumbull and Chamberlin that the plaintiff's CTS was

nonsevere, relied on the opinion of Dr. Jacobs, who took into account and assessed limitations

flowing from the CTS, to discredit the Chamberlin opinion, but then inexplicably rejected the Jacobs opinion.  He argued that the administrative law judge filled the resulting vacuum by impermissibly interpreting raw medical evidence, assessing reaching and handling limitations unsupported by any expert opinion of record.  *See Gordils v. Secretary of Health & Human Servs.,* 921 F.2d 327, 329 (1st Cir. 1990) (Although an administrative law judge is not precluded from "rendering commonsense judgments about functional capacity based on medical findings," he or she "is not qualified to assess residual functional capacity based on a bare medical record.").[3]

He contended that the error was not harmless because Dr. Jacobs found the plaintiff more limited in reaching/handling ability than did the administrative law judge.  *Compare* Finding 5, Record at 18 (administrative law judge's finding that plaintiff able to perform "occasional bilateral overhead reaching" and "frequent bilateral grasping and handling") *with id.* at 850-51 (Dr. Jacobs' opinion that plaintiff had moderate limitations, that is, "[s]ignificantly limited but not completely precluded[,]" in grasping, turning, and twisting objects and using his fingers/hands for fine manipulation, and marked limitations, that is, "[e]ssentially [p]recluded[,]" in using his arms for reaching, including overhead).

As the commissioner observed in her brief and through counsel at oral argument, *see* Opposition at 15 n.7, the plaintiff did not argue, in his statement of errors, that he was more limited than the administrative law judge assessed in overhead reaching, grasping, or fine manipulation, *see* Statement of Errors at 7-12.  Accordingly, he waived that point.  *See, e.g.*, *Farrin v. Barnhart,* No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by

---

[3] Neither Dr. Trumbull nor Dr. Chamberlin assessed any reaching or handling limitations.  *See* Record at 118, 634.

this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted).

That is fatal to his bid for reversal and remand on the basis of the administrative law judge's interpretation of raw medical evidence in assessing reaching and handling limitations. *See, e.g., Soto v. Colvin*, No. 2:14-cv-28-JHR, 2015 WL 58401, at *4 (D. Me. Jan. 5, 2015) ("[T]his court has consistently held that, despite the well-known precept that an administrative law judge may not interpret raw medical evidence on [his] own, . . . the burden remains with the claimant to show that such an error is not harmless.").

The plaintiff did argue, in his statement of errors, that the administrative law judge's physical RFC determination was not only unsupported by the probative medical opinions of record but also inadequately explained, as a result of which it was unsupported by substantial evidence. *See* Statement of Errors at 7-9.  It is true that the administrative law judge's discussion is hardly a model of clarity.  He purported to give "controlling" weight to the Trumbull opinion, *see* Record at 19, which would have been an error of law, *see, e.g.*, Social Security Ruling 96-2p, reprinted in *West's Social Security Reporting Service* Ruling 1983-1991 (Supp. 2014) ("SSR 96-2p") at 112 ("Although opinions from other acceptable medical sources may be entitled to great weight, and may even be entitled to more weight than a treating source's opinion in appropriate circumstances, opinions from sources other than treating sources can never be entitled to 'controlling weight.'"), but then, to give the plaintiff the benefit of the doubt, deemed him significantly more limited than had Dr. Trumbull, *compare* Finding 5, Record at 18 *with id*. at 631-39.  He purported to reject the Chamberlin opinion, *see id.* at 19; however, as the commissioner points out, *see* Opposition at 14, his RFC determination aligns more closely with that of Dr. Chamberlin than that of Dr. Trumbull,

*compare* Finding 5, Record at 18 *with id*. at 117-18, 632-35.[4]  He purported to give some weight to the Kunas opinion but did not explain in what respect.  *See id*. at 19.  He purported to reject the Jacobs opinion, but then relied on it in purportedly rejecting the Chamberlin opinion.  *See id*.

Nonetheless, "a failure of articulation – while hardly to be emulated or encouraged – does not constitute reversible error when . . . the court nonetheless readily can discern substantial support for the administrative law judge's findings in the Record."  *Furr v. Astrue,* Civil No. 08-434-P-S, 2009 WL 3336113, at *4 (D. Me. Oct. 15, 2009) (rec. dec., *aff'd* Nov. 12, 2009) (citation and internal quotation marks omitted).

As the commissioner points out, *see* Opposition at 15, to the extent that the administrative law judge's RFC determination deviates from the opinions of either Dr. Trumbull or Dr. Chamberlin, it incorporates additional (that is, more plaintiff-friendly) restrictions, including lifting/carrying restrictions compatible with light work, a need for a sit/stand option, and limitations against balancing or stooping more than occasionally, performing bilateral overhead reaching more than occasionally, and performing bilateral grasping and handling more than frequently, *compare* Finding 5, Record at 18 *with id*. at 117-18, 632-35.  This is consistent with the administrative law judge's explanation that he gave the plaintiff the benefit of the doubt in finding him limited to a light work capacity despite deeming the Trumbull opinion persuasive.  *See id*. at 19.

The commissioner acknowledges that it is not clear how the administrative law judge derived some of the "added" restrictions, notably, the need for a sit-stand option and the particular limitations assessed in overhead reaching, handling, and fine manipulation.  *See* Opposition at 14-

---

[4] Dr. Trumbull assessed no postural limitations.  *See* Record at 633.  However, like Dr. Chamberlin, the administrative law judge found that the plaintiff could only occasionally climb, kneel, crouch and crawl, except that he had to avoid climbing ladders, ropes, and scaffolds.  *Compare* Finding 5, *id*. at 18 *with id*. at 118.

15 & n.7.  Yet, for the reasons discussed above, the plaintiff fails to demonstrate any harmful error in the assessment of the reaching, handling, and manipulative limitations, and for the reasons discussed below, he fails to demonstrate any harmful error in the assessment of the sit-stand option.[5]

### b.  Mental RFC

The plaintiff faults the administrative law judge for giving great weight to the opinion of Dr. Zimmerman, who did not complete a mental RFC assessment or otherwise identify specific functional limitations.  *See* Statement of Errors at 8.  As a result, he reasons, the administrative law judge's mental RFC determination also is the product of his lay interpretation of the raw medical evidence.  *See id.*[6]

In this context, as well, the administrative law judge's failure of articulation is not enough to warrant remand.  As the commissioner points out, *see* Opposition at 16, the administrative law judge tacitly adopted the findings of Drs. Burkhart and Stahl, both of whom assessed specific

---

[5] At oral argument, in response to my question about why the administrative law judge's RFC determination was not adequately supported by the Trumbull and Chamberlin opinions, the plaintiff's counsel argued that the commissioner could not rely on the opinion of Dr. Chamberlin because the administrative law judge expressly rejected it and the opinion of Dr. Trumbull because there was no indication that the administrative law judge actually relied on it.  For that proposition, he cited *SEC v. Chenery Corp.*, 332 U.S. 194 (1947).  *See Day v. Astrue*, No. 1:12-cv-141-DBH, 2012 WL 6913439, at * 10 (D. Me. Dec. 30, 2012) (rec. dec., *aff'd*, Jan. 18, 2013) (Pursuant to the *Chenery* rule, "a reviewing court cannot affirm an agency's decision on the basis of a *post hoc* rationalization but must affirm, if at all, on the basis of a rationale actually articulated by the agency decision-maker.  An exception to the *Chenery* rule exists when a remand will amount to no more than an empty exercise because, for example, application of the correct legal standard could lead to only one conclusion.") (citations and internal punctuation omitted).  The plaintiff did not raise a *Chenery* argument in his statement of errors.  *See generally* Statement of Errors.  In any event, *Chenery* would not preclude consideration of the Trumbull opinion, on which the administrative law judge expressly relied.  While he did deviate from it, he explained that he did so to give the plaintiff the benefit of the doubt.  *See* Record at 19.

[6] In the context of summarizing the medical evidence of record, the plaintiff asserts that the administrative law judge failed to make the specific psychiatric review technique findings required by 20 C.F.R. § 404.1520a, as a result of which one must infer that he determined that the plaintiff had only mild limitations in activities of daily living and social functioning but moderate limitations in concentration, persistence, or pace.  *See* Statement of Errors at 2.  The plaintiff does not repeat this point in the argument portion of his brief.  *See* Statement of Errors at 4-13.  However, to the extent that he means to press the point, the error in articulation is harmless, in that, as the plaintiff suggests, the administrative law judge provided sufficient detail that one can infer that those were his findings.  *See Furr*, 2009 WL 3336113, at *4; Record at 16-17.

functional limitations. *Compare* Finding 5, Record at 18 (plaintiff able to "perform simple-unskilled work" and "maintain attention and concentration for two hour increments throughout an eight hour work day") *with id.* at 119 (Stahl opinion that plaintiff able, *inter alia*, to understand and remember simple instructions and tasks and work in two-hour blocks performing simple tasks over the course of a normal workday/workweek), 642 (Burkhart opinion that plaintiff able, *inter alia*, to understand and remember simple instructions and carry out simple tasks for two-hour blocks over course of a normal workday/workweek).[7]

## 2. Function-by-Function Analysis (Sit/Stand Option)

The plaintiff finally complains that the administrative law judge failed to make the function-by-function analysis required by SSR 96-8p, which mandates that an RFC assessment "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis" before expressing RFC in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy. Statement of Errors at 8-9 (quoting SSR 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2014), at 143). He adds that, in contravention of Social Security Rulings 96-9p ("SSR 96-9p") and 83-12 ("SSR 83-12") and this court's decision in *Wasilauskis v. Astrue*, Civil No. 08-284-B-W, 2009 WL 861492, at *5 (D. Me. Mar. 30, 2009) (rec. dec., *aff'd* Apr. 21, 2009), the administrative law judge failed to specify the frequency with which he needed to alternate periods of sitting and standing. *See id.* at 9-12.

---

[7] The administrative law judge assessed no limitation on social interaction. *See* Finding 5, Record at 18. In this respect, he tacitly adopted the opinion of Dr. Burkhart that the plaintiff was able to interact with coworkers, supervisors, and the public. *See id.* at 642. Dr. Stahl found him able to interact with coworkers and supervisors but not with the public. *See id.* at 120. The plaintiff makes no issue of the fact that the administrative law judge omitted a restriction against dealing with the public, and articulates no reason why Dr. Burkhart's opinion cannot stand as substantial evidence of his mental RFC. *See* Statement of Errors at 7-9.

However, as the commissioner rejoins, with respect to the overarching point that the administrative law judge failed to make a function-by-function analysis:

> [T]his court has not interpreted [SSR 96-8p] to require the administrative law judge to list specifically the amount of each function within a particular exertion level that a claimant can perform.  An underlying function-by-function analysis by a state-agency reviewing expert or an expert testifying at the hearing will suffice.

Opposition at 16 (quoting *Rudge v. Astrue*, No. 1:11-cv-440-DBH, 2012 WL 5207591, at *3 (D. Me. Sept. 30, 2012) (rec. dec., *aff'd* Oct. 22, 2012)).  The plaintiff does not demonstrate how, in the face of the administrative law judge's explicit reliance on the Trumbull RFC opinion and tacit reliance on the Chamberlin RFC opinion, he erred in failing to undertake a separate function-by-function analysis.

With respect to the administrative law judge's failure to specify the frequency with which the plaintiff needed to sit and stand, the commissioner correctly points out that this court has distinguished *Wasilauskis* and SSR 96-6p on the basis that this need only be done in the context of sedentary work.  *See* Opposition at 17; *Levesque v. Astrue*, No. 09-cv-331, 2010 WL 2076013, at *3-*4 (D. Me. May 20, 2010) (rec. dec., *aff'd* June 18, 2010).

The *Levesque* court acknowledged that SSR 83-12 states that an individual requiring a sit/stand option "is not functionally capable of doing the prolonged standing or walking contemplated for most light work"; however, it noted that SSR 83-12 also provides that "persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work."  *Levesque*, 2010 WL 2076013, at *3 (citation and internal punctuation omitted).  It observed that "the administrative law judge specifically found that the [claimant] was able to stand up to 6 hours in an 8-hour workday and sit for up to 6 hours in an 8-hour workday, making the Ruling's assumptions about individuals assigned a capacity for light work and needing a sit/stand option inapplicable to this case."  *Id.*

(citation and internal punctuation omitted).  It added that "SSR 83-12 does not speak to the need to quantify a claimant's sit/stand needs." *Id.*

The plaintiff attempts to distinguish *Levesque* on the basis that, here, the administrative law judge specified no standing/walking and sitting capacities, merely stating that the plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b).  *See* Statement of Errors at 12; Finding 5, Record at 18.  He notes that section 404.1567(b) omits any reference to the amount of standing or walking required.  *See* Statement of Errors at 12.  Nonetheless, as the commissioner points out, *see* Opposition at 18, the attempted distinction fails for several reasons.

First, section 404.1567(b) does make clear that "a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls[,]" and that, "[i]f someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time[,]" 20 C.F.R. § 404.1567(b).  The administrative law judge found the plaintiff capable of frequent manipulation and did not specify a sitting limitation.  Thus, at a minimum, the administrative law judge made clear that the plaintiff retained the capacity to do a good deal of walking, standing, or sitting.

Second, both the administrative law judge and the vocational expert who provided representative jobs in response to his hypothetical question can be presumed to have been familiar with Social Security Ruling 83-10 ("SSR 83-10"), which specifies that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  SSR 83-10, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 29.

Finally, as discussed above, the administrative law judge relied expressly on the Trumbull opinion and implicitly on that of Dr. Chamberlin.  Drs. Trumbull and Chamberlin both deemed the plaintiff capable of standing and/or walking for a total of about six hours in an eight-hour workday and sitting for a total of about six hours in an eight-hour workday.  *See* Record at 117, 632.

In these circumstances, there was no error in failing to specify the frequency of the plaintiff's need to alternate sitting and standing.

Because the plaintiff's bid to overturn the administrative law judge's Step 5 finding is predicated entirely on the success of one or more of his numerous challenges to the RFC determination, *see* Statement of Errors at 12-13, his Step 5 challenge also falls short.

## II.  Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

Dated this 17th day of April, 2015.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge